IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> TRAVIS E. CORRELL, GREGORY THOMPSON, § <br> DWIGHT JOHNSON, HARRY ROBINSON § <br> "ROBBY" GOWDEY, et al., § <br> Defendants, § <br> and § <br> § <br> BANNER SHIELD, LLC, HOSPITALITY § <br> MANAGEMENT GROUP, INC., CREATIVE § <br> WEALTH VENTURES and JTA ENTERPRISES, § <br> Relief Defendants. § | | **Lead Case** <br> CASE NO. 4:05-CV-472 RAS |
| SECURITIES AND EXCHANGE COMMISSION, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> GLOBAL FINANCE & INVESTMENTS, INC. § <br> et al., § <br> Defendants, § <br> and § <br> § <br> USASSET & FUNDING CORP., et al. § <br> Relief Defendants. § | | **Consolidated Case** <br> CASE NO. 4:07-CV-346 RAS |

**MOTION FOR ORDER TO SHOW CAUSE WHY KENT BUSH, LARRY CADWELL,
ONE SMART TOOL, INC. d/b/a SMART TALK PRO
SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE
TO COMPLY WITH RECEIVERSHIP ORDER AND BRIEF IN SUPPORT**

TO THE HONORABLE RICHARD A. SCHELL, UNITED STATES DISTRICT JUDGE:

COMES NOW S. Gregory Hays, the duly appointed and acting Receiver in this action (the

"Receiver"), and moves this Court for an Order requiring Messrs. Kent Bush and Larry Cadwell, and

their company, One Smart Tool, Inc. *per se* and doing business as Smart Talk Pro (the "Respondents") to appear and show cause why they should not be held in contempt for failing to comply, and/or causing their companies to comply, with this Court's Order Appointing Receiver[1] dated December 7, 2005 as follows:

### I.

#### PROCEDURAL BACKGROUND AND CERTIFICATE OF CONFERENCE

1.1. On April 23, 2008 Kent Bush was interviewed by Ralph Freeman, investigator, regarding "investments" made by Greg Thompson ("Thompson") in companies owned or operated by him, One Smart Tool, Inc., and Smart Talk Pro (the "Companies"). Mr. Freeman provided him with copies of the Order Appointing Receiver as well as a copy of the Agreed Order of Preliminary Injunction and other Equitable Relief as to the Defendant Gregory Thompson[2] (the "Receivership Orders"). Per the Receivership Orders, S. Gregory Hays (the "Receiver") was appointed receiver for Thompson. According to bank records obtained from Thompson during the Receiver's investigation of this matter, Thompson invested $230,000.00 of investor funds (the "Funds") in the Companies. Mr. Bush responded to the initial interview and later met with the Receiver's counsel and his investigator on May 5, 2008 and provided some information. He informed the Receiver's counsel, however, that Mr. Cadwell, and in particular, the attorney for the Companies, Mr. Todd Phillippi, was in possession of the bank records reflecting the receipt and disposition of the Funds.

1.2. After meeting with Mr. Bush, the Receiver's counsel attempted to make contact with Mr. Phillippi. His telephone calls and letters were unsuccessful in obtaining any meaningful communication. By letter dated June 5, 2008, copies of the Receivership Orders were provided to

---

[1] Order Appointing Receiver, Docket no. 7.

[2] Docket no. 16.

Mr. Phillippi, and demand was made upon his clients for return of the $230,000.00. In addition to being Mr. Cadwell's purported counsel, Mr. Phillippi is also the registered agent for service of process for One Smart Tool, Inc. A true and correct copy of said letter, along with the USPS "green card" is attached hereto as **Exhibit "1"** to the Declaration of Clark B. Will (the "Will Declaration") which is attached hereto as **Exhibit "A"** and is incorporated by reference herein for all purposes.

    1.3.    Mr. Phillippi never responded to the letter at **Exhibit "A-1"**[3]. Accordingly, his client, Mr. Cadwell was located and served with a subpoena to produce the documents relevant to the Funds. He was served with the subpoena on July 31, 2008. A true and correct copy of the subpoena is attached hereto as **Exhibit "A-2"** and is incorporated by reference herein for all purposes. Although duly served with the subpoena, Mr. Cadwell never produced the documents as directed. Thereafter, communications were received from Mr. Phillippi, and a copy of the subpoena was provided to him. A true and correct copy of the letter sending him the subpoena is attached hereto as **Exhibit "A-3"** and is incorporated by reference herein for all purposes.

    1.4.    The Receiver has, through his counsel, provided the Respondents with copies of the relevant orders and has even gone through the effort of subpoenaing them for the records regarding the Funds. Notwithstanding that fact, the Respondents have failed and refused, and continue to fail and refuse to comply with the requirements of the Receivership Order.[4]

---

[3]    The exhibits to the Will Declaration will be cited as "A" for Exhibit A, followed by the exhibit numbers. So Exhibit A-1 would be Exhibit 1 to the Declaration at Exhibit A.

[4]    Mr. Kent Bush has cooperated to the extent possible. He has informed the Receiver's counsel that all records and documents were maintained either by Mr. Cadwell or by Mr. Phillipi. He stated that he recognized that money would need to be paid back, and has made some financial disclosure. The Receiver hopes to have resolved the issues with Mr. Bush prior to the necessity of a hearing, herein.

**MOTION FOR ORDER TO SHOW CAUSE WHY KENT BUSH, LARRY CADWELL,**
**ONE SMART TOOL AND SMART TALK PRO SHOULD NOT BE HELD IN CONTEMPT**
**FOR FAILURE TO COMPLY WITH RECEIVERSHIP ORDER AND BRIEF IN SUPPORT - Page 3**

## II.

### BACKGROUND FACTS

2.1. This motion is supported by the Will Declaration, attached as **Exhibit "A"** hereto and incorporated by reference for all purposes. As is also set forth in the Will Declaration, the Receiver has located the Respondents, and can provide service of a show cause order herein.

2.2. As noted above, the Court herein appointed S. Gregory Hays as Receiver for *inter alia*, Greg Thompson and TNT Office Supply, Inc., (the "Thompson Defendants"). As alleged in the Complaint filed herein, Correll and the Thompson Defendants operated a *Ponzi* scheme and defrauded numerous investors out of millions of dollars.[5] Thompson and Correll then used investor funds to invest in and purchase various assets around the country for their own personal use and benefit, or for that of their friends and families.

2.3. Within the past several months, the Receiver has undertaken substantial efforts to locate Receivership Assets, as those assets are defined under the Receivership Order. The Receivership Assets are comprised of any and all assets, liquid or illiquid, personal or real property, that were purchased or acquired using improperly acquired investor funds. Order Appointing Receiver at ¶ 3.

2.4. In connection with the Receiver's investigation, the Receiver has determined the following:

(A) On or about March 9, 2004, a "Secured Promissory Note" was executed by Kent Bush and Larry Cadwell in the amount of $100,000.00, payable to the order of Greg Thompson.

---

[5] On November 30, 2007, Travis Correll pled guilty to wire fraud in his criminal proceeding styled 1:07-CR-00365-ODE in the U.S. District Court for the Northern District of Georgia, Atlanta Division. In the Sentencing Memorandum filed by Mr. Correll's criminal counsel therein on March 12, 2008, Mr. Correll admits to operating a Ponzi scheme. On March 24, 2008, Mr. Correll was sentenced to 12 years in prison and ordered to pay over $29 million in restitution.

A true and correct copy of said "note" is attached to the Will Declaration as **Exhibit "A-4"** and incorporated by reference herein for all purposes. The $100,000.00 "invested" was investor funds, and remains unrepaid.

(B) Thereafter, on or about March 12, 2004, a second "Secured Promissory Note" was executed by Kent Bush and Larry Cadwell in the amount of $100,000.00, also payable to the order of Greg Thompson. A true and correct copy of said "note" is attached to the Will Declaration as **Exhibit "A-5"** and incorporated by reference herein for all purposes. The $100,000.00 "invested" was investor funds, and remains unrepaid.

(C) As has been determined from the investigation, the investments were for interests in a product called "Smart Talk Pro." Based upon the best information the Receiver's counsel has been able to muster, Smart Talk Pro was operated as an assumed name for One Smart Tool, Inc. The product was never successfully marketed or sold, and the Funds were never returned.

(D) A review of Thompson's checking account at Security Service Federal Credit Uniton reflects that on June 23, 2004 he wrote check number 3942 to One Smart Tool with the memo indicating that it was for the purchase of "additional 2% company stock."

(E) Based upon an interview with Mr. Bush, the books and records regarding the two notes and the $30,000.00 check would be in Mr. Cadwell's possession. As is reflected above, letters and a subpoena were served on Mr. Cadwell and his counsel, however, they failed or refused to provide the records. The $30,000.00 "invested" was investor funds, and remains unrepaid.

2.5. Based upon the Receiver's investigation of the books and records of Thompson and having interviewed various parties and third parties in this case, has determined that the $230,000.00 in payments by Thompson to Bush/Cadwell/One Smart Tool, Inc. was comprised of funds obtained improperly by Mr. Thompson from investors in the *Ponzi* scheme that is the basis for this lawsuit.

Will Decl. at ¶ 8. As such, those funds constitute part of the Receivership Estate as defined in the Receivership Orders. Respondents are in possession of assets of the Receivership Estate (cash) acquired by Thompson from investors in violation of the securities laws of the United States

2.6. Paragraph 9 of the Order Appointing Receiver states that all persons in active concert with Thompson, upon receiving notice of the Order, shall immediately tender to the Receiver, *inter alia* "business records of any kind." The Receiver, through his counsel, even went so far as to serve Mr. Cadwell with a subpoena to obtain the materials covered by the Receivership Orders, however, Mr. Cadwell failed and/or refused to provide the bank records and other documents relative to the Funds. The Funds are part of the Receivership Estate and are recoverable by the Receiver. Despite having received actual notice of the Receivership Orders, the demand letter at Exhibit A-1 and the referenced July 31, 2008 subpoena, Respondents have failed and refused to tender the funds or complete records pertaining to them to the Receiver.

2.7. Corporations and similar organizations, such as limited liability companies and partnerships, although distinct legal entities, can only act or fail to act through the individuals who own and operate them. A natural problem arises when a company is found in contempt - that is, how does the Court coerce the company into compliance with the contempt order? While the Fifth Circuit has not addressed whether a civil contempt sanction can be upheld as against a corporate officer, who is not a party to the underlying proceeding, for disobeying an order directed to his company, other circuits have. *See, e.g. Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 507 (8th Cir. 2000); *Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 876 (7th Cir. 1998); *United States v. Hochschild*, 977 F.2d 208, 209-11 (6th Cir. 1992), cert. denied, 113 S.Ct. 1017 (1993); *NLRB v. Sequoia District Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977). Further, three judges (Judge Kendall and Magistrate

Judge Kaplan/Judge Lindsay) in the Northern District of Texas (Dallas Division) have held corporate officers in civil contempt after their limited liability companies failed to turn over money to a court appointed receiver, noting that "[a] limited liability company and a corporation can act only through its agents." *See: SEC v. Funding Resource Group*, No. 3-98-CV-2689-X, Order at 3 (N.D. Tex., May 24, 1999), appeal dism'd, 227 F.3d 231 (5th Cir. 2000); *Michael J. Quilling, as Receiver for Sardaukar Holdings, IBC and Bradley C. Stark v. 3-D Marketing, LLC*, No. 3-06-CV-0293-L, Findings and Recommendations of Magistrate Judge at 5-6 (N.D. Tex., July 18, 2007), adopted by Order of Contempt (Sept. 20, 2007).

2.8.  The notes at Exhibits A-4 & A-5 were both made by Respondents Bush and Cadwell. As individuals, they are subject to coercive contempt. The heading on the notes, however, reflects "Smart Talk Pro" which the Receiver understands to be an assumed name for One Smart Tool, Inc. According to the records obtained in his investigation, One Smart Tool also received a $30,000.00 "investment" from Mr. Thompson. One Smart Tool is, to the best of the Receiver's information and belief, owned and operated by Mr. Cadwell. It is part of the Receiver's charge in this matter, to collect back such monies.

### III.

#### ARGUMENT AND AUTHORITIES

3.1.  A contempt of Court is the disregard of judicial authority. *Sigety v. Abrams*, 632 F.2d 969, 976 (2nd Cir. 1980). Stated another way, Federal Courts have inherent power necessary to achieve the orderly and expeditious disposition of their dockets and these powers include the authority to punish for contempt in order to maintain obedience to court orders and authority to impose reasonable and appropriate sanctions. *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 465 (5th Cir. 1996). A person who fails to obey a lawful court may be

punished for contempt. *Travelhost, Inc. v. Blandford*, 68 F.3D 958, 961 (5th Cir. 1995). In a civil contempt proceeding, the movant must establish that: (1) a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the order. *See American Airlines, Inc. v. Allied Pilots Association*, 228 F.3d 574, 581 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1190 (2001), *citing Martin v. Trinity Industries, Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). The standard of proof is clear and convincing evidence. *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). However, the conduct need not be willful so long as the respondent actually violated the court's order. *Allied Pilots*, 228 F.3d at 581. Further, Fed. R. Civ. P. 45(e) makes it clear that, as here, when a person served with a subpoena fails to obey it, the issuing court may treat it as a contempt.

3.2. Moreover, the Receivership Order is enforceable by this Court's inherent power to punish a contemnor for failure to comply with a court order. In *SEC v. AMX Int'l, Inc.*, 7 F.3d 71, 72-73 (5th Cir. 1993), the United States Court of Appeals for the Fifth Circuit dealt with the issue of the appropriate remedy for violation of a disgorgement order. In that case, the SEC sought to enforce a disgorgement order by means of contempt against a defendant who had agreed to disgorge certain assets. *Id.* at 72. The Fifth Circuit held that contempt was an appropriate means by which to enforce a judgment requiring disgorgement. *Id.* at 73. The Fifth Circuit reasoned that because a disgorgement order constituted an injunction in the public interest rather than a mere money judgment or debt, contempt was the appropriate enforcement mechanism to ensure compliance with the order. *Id.* at 74-75. Accordingly, a disgorgement order "was properly enforceable by the court's contempt powers, including incarceration until the court-ordered payments were made." *Id.* at 76.

3.3. The Fifth Circuit has also recognized that a contempt proceeding is an appropriate mechanism to enforce the rights of a court-appointed receiver. *See Santibanez v. Wier, McMahon*

*& Co.,* 105 F.3d 234, 242 (5th Cir. 1997). Civil contempt proceedings are appropriate to protect the rights of the parties to the litigation or those who have an interest in the subject matter of the lawsuit, including the defrauded investors who are injured as a result of Sitton's and Correll's scheme. *Louisiana Education Assn. v. Richland Parish School Bd.,* 421 F. Supp. 973, 975 (D.C. La. 1976).

3.4.  The Will Declaration filed concurrently with this motion, conclusively establishes that the Respondents are in possession of Receivership Estate Assets and are refusing to undertake any effort to turn over said assets, or any records pertaining to them. The Receiver has undertaken all reasonable actions to obtain the Respondents' cooperation, and they are clearly flouting this Court's authority. The Receiver respectfully submits that such conduct should not be tolerated by this Court. In order for the Receiver to perform his duties charged to him under his appointment, the Receiver requests the assistance of this Court and requests that this Court enter an order setting a hearing for the Respondents to appear and to show cause why they should not be held in civil contempt.

## IV.

### PRAYER FOR RELIEF

4.1.  The Receiver requests that this Court:

    (A)  Set a contempt hearing within the next thirty (30) days;

    (B)  Order the Respondents to appear in person before this Court on the date of the hearing, then and there to show cause, if any there may be, why they should not be held in contempt for refusing to turn over the Funds, or turning over the books and records regarding the funds and/or complying with the subpoena;

    (C)  Find the Respondents in contempt of Court for failing to turn over the Funds and/or the books and records regarding the same;

    (D)  Award the Receiver damages and losses due to the contempt, including reasonable and necessary attorney's fees incurred in the preparation of this motion and the hearing on same, such damages, if any, to be placed in the

Correll Receivership Estate.[6]

WHEREFORE, PREMISES CONSIDERED, the Receiver prays that he be granted the relief set forth above and that he receive such other relief, both at law and in equity, to which he may justly be entitled.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.
2001 Bryan St., Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telecopier)

By: /s/ Clark B. Will
    Clark B. Will, SBN 21502500
    cwill@qsclpc.com
    Michael D. Clark, SBN 00798108
    mclark@qsclpc.com

AND

J. David Dantzler, Jr.
Georgia Bar No. 205125
david.dantzler@troutmansanders.com
Merle R. Arnold, III
Georgia Bar No. 023503
merle.arnold@troutmansanders.com
TROUTMAN SANDERS LLP
600 Peachtree St., NE, Suite 5200
Atlanta, GA 30308-2216
(404) 885-3000
(404) 885-3995 (Telecopier)

ATTORNEYS FOR RECEIVER

---

[6] Sanctions in a civil contempt proceeding may be awarded to compensate the movant for losses sustained as a result of the contemptuous conduct. *Id.* at 585, *quoting United States v. United Mine Workers of America*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). A district court has broad discretion in assessing damages for civil contempt. *Id., citing Long Island Rail Road Co. v. Brotherhood of Railroad Trainmen*, 298 F.Supp. 1347, 1350 (E.D.N.Y. 1969). "The purpose is to compensate for the damages sustained." *Id.; see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

## CERTIFICATE OF SERVICE

This is to certify that on the 13th day of October, 2008, all counsel of record in these proceedings have been served a copy of the above in accordance with the Federal Rules of Civil Procedure and the Court's local rules.

                                              /s/   *Clark B. Will*
                                              Clark B. Will